IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| XAVIER B. ORTIZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL NUTTER; LOUIS GIORLA; | : | |
| MAJOR ABELLO; C/O HERRERA; | : | |
| SERGANT RYAN; and M. FARRELL. | : | No. 15-4689 |

MITCHELL S. GOLDBERG, J.                                              OCTOBER 14, 2016

### MEMORANDUM OPINION

*Pro se* plaintiff Xavier Ortiz brings this action under 42 U.S.C. § 1983 ("section 1983"). He alleges violations of his constitutional rights while incarcerated as a pre-trial detainee within the Philadelphia Prison System ("PPS"). Defendants, represented by the City of Philadelphia Law Department ("City"), filed a motion to dismiss,[1] and Ortiz has filed a brief response. For the reasons described below, the motion to dismiss will be granted in part and denied in part.

### I.      Factual Background

Ortiz asserts claims against two classes of defendants: (1) supervisors – Michael Nutter, the former Mayor of Philadelphia; Louis Giorla, the former Commissioner of the Philadelphia Prison System; M. Farrell, whom Ortiz describes as "Warden"[2]; Major Abello, whom Ortiz describes as "Deputy Warden"; Sergant [sic] Ryan, whom Ortiz describes as "3-11 pm Shift Commander"; and (2) a direct actor – C/O (correctional officer) Herrera.

From the facts in Ortiz's complaint, the court can discern three main claims. The first is that Ortiz was unconstitutionally "placed into a 3 man cell that was made for 2 people [and] told to sleep on the floor

---

[1] The City filed its motion to dismiss on behalf of five of the six defendants, all but Sergant Ryan. Motion to Dismiss, Docket No. 7. Ryan was not served, as he could not be located. Docket No. 9. For purposes of this opinion, Ryan's absence is immaterial.

[2] Ortiz likely refers to Michele Farrell, former warden of CFCF.

in [a] boat," often referred to as a "triple celling" claim. Ortiz alleges this treatment aggravated an arm injury and that having this injury meant he should have slept in a bed, not a boat. He also alleges the triple cell was unsanitary because he was forced to sleep next to the toilet, and unsafe because it was overcrowded.

In his second claim, Ortiz alleges a prison guard, C/O Herrera, injured him by popping a "bread bag" of "hot 190° water" that Ortiz was carrying, causing the water to burn Ortiz's already injured right hand and his right thigh.

The third claim alleges inadequate medical care. Ortiz asserts he was not provided any medical treatment after the burning incident. Ortiz further alleges an over-six-month delay in providing physical therapy promised at intake, causing him to lose muscle and movement in his hand and wrist. He further alleges that unspecified actors failed to take him to a scheduled surgery at Temple Hospital, which "the jail knew about," and denied him access to splints and physical therapy equipment from outside the jail, which a doctor at the jail and the warden had approved.

## II.   Legal Framework

To survive a motion to dismiss, a complaint must contain sufficient facts that, when accepted as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). A complaint is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not establish a plausible allegation. *Id.* Where, as here, the plaintiff is proceeding *pro se*, "the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

Section 1983 provides a remedy for deprivation of rights established in the Constitution or by federal law. To state a claim under section 1983, a plaintiff must demonstrate the defendant, acting under

color of state law, deprived him of a right secured by the Constitution or the laws of the United States. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). While, "[g]overnment officials may not be held liable [under section 1983] for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First. Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Supervisor-defendants may be liable if (a) they were personally involved in the constitutional violation, *i.e.* they participated in it, directed others to commit it, or had actual knowledge of and acquiesced in it. *Id.* Supervisor-defendants may *also* be liable if (b) "they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.'" *Id. (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

### III. The Triple Celling Claim

A pre-trial detainee's conditions of confinement claim, including a "triple celling" claim, is analyzed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which proscribes pre-trial punishment. *Bell v. Wolfish*, 441 U.S. 520, 534 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 166-67 (3d Cir. 2005). A condition of confinement is unconstitutional punishment if it results from an express intent to punish or is not rationally related to a legitimate governmental purpose. *Id.* at 538-39.

The City's motion to dismiss does not address whether "triple celling" is unconstitutional punishment.[3] Rather, the City argues that defendants are not liable because Ortiz failed to allege their

---

[3] The constitutionality of triple celling cannot be easily assessed at this stage of the litigation. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (holding that to assess whether triple celling is rationally related to the government purpose of managing an overcrowded prison, a district court must "look to the totality of the conditions" specific to the prison at issue, "including the size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise").

"personal involvement" in the alleged constitutional violations. The City does not address whether the supervisor defendants may also be liable if they, with deliberate indifference to causing a constitutional harm, created or maintained a policy or custom of triple celling.

The United States Court of Appeals for the Third Circuit has adopted a test to evaluate whether supervisors are liable under § 1983 for deliberate indifference to an unconstitutional policy or practice. "The plaintiff must (1) identify the <u>specific supervisory practice or procedure</u> that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure <u>created an unreasonable risk of the ultimate injury</u>, (3) the supervisor <u>was aware that this unreasonable risk existed</u>, (4) the supervisor was <u>indifferent to the risk</u>; and (5) the underling's <u>violation resulted from the supervisor's failure to employ that supervisory practice or procedure</u>." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)) (emphasis added); *See also Barkes*, 766 F.3d at 330. The court in *Brown* highlighted that "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the supervisor had done more than he or she did." *Id.* (citing *Sample*, 885 F.2d at 1118). A plaintiff must specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest to the Court a relationship between the "identified deficiency" of a policy or custom and the injury suffered. *Id.*

Ortiz's complaint, even when construed liberally, does not allege facts that if accepted would establish that the supervisor defendants were personally involved in the alleged constitutional violations. Nor does the complaint allege a policy of housing inmates in overcrowded cells. Indeed, nowhere in the text of the complaint does Ortiz state facts that might establish a practice or custom (for example, the complaint does not reflect that other inmates suffered similar circumstances). *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (Plaintiff's complaint did not "allege other inmates suffered

similar deprivations. . . that might establish a custom") (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (Custom may be proven by showing that a specific course of conduct is "well-settled and permanent," even if that conduct is not expressly endorsed by a written rule)).

While *pro se* plaintiffs cannot be held to as high a pleading standard as other litigants, the Court cannot infer facts central to plaintiff's claims that are not clearly stated in the complaint or other documents before the Court. *See, e.g., Hamilton v. Jamieson*, 355 F. Supp. 290, 298 (E.D. Pa. 1973); *Wells v. Brown*, 891 F. 2d 591, 592-594 (6th Cir. 1988) (collecting cases where courts have required *pro se* litigants to adhere to basic pleading requirements); *Case v. State Farm Mutual Automobile Insurance Co.*, 294 F.2d 676, 678 (5th Cir. 1961) ("[T]here is no duty [on the part] of the trial court or appellate court to create a claim which appellant has not spelled out in his pleading"). Because Ortiz has not stated clear-cut facts to establish supervisor liability under either the direct participation or "deliberate indifference" to an unconstitutional policy or practice tests, the City's motion to dismiss will be granted with respect to Ortiz's "triple celling" claim.

After a motion to dismiss has been filed, a District Court should inform a plaintiff he has leave to amend his complaint within a set period of time, unless an amendment would be inequitable or futile. *Grayson*, 293 F.3d at 108. It is conceivable that Ortiz could amend his complaint to state a viable claim of supervisor liability for injuries suffered as a result of triple celling. Consequently, Ortiz will be granted leave to amend his complaint with respect to his "triple celling" claim.

### IV. Burning Claim

In alleging C/O Herrera popped a bag of hot water Ortiz was carrying, the court understands Ortiz to raise a claim of excessive force in violation of the Due Process Clause of the Fourteenth Amendment. *See Kinglsey v. Hendrickson*, 135 S. Ct. 2466 (2015).

The City's motion to dismiss argues Herrera is not liable because, as the City reads Ortiz's

complaint, Ortiz alleges Herrera accidentally popped the bag of water, and "negligence claims are not encompassed within § 1983." Motion to Dismiss, Docket No. 7, at page 3 (*citing Davidson v. O'Lone*, 752 F.2d 817, 826 (3d Cir. 1984)). I do not find anything in the complaint to suggest Ortiz alleges Herrera's conduct was accidental or merely negligent. *See* Complaint, Docket No. 5, at page 3. In his response to the motion to dismiss, Ortiz alleges, "Herrera intentionally broke the bag of hot water with a pen." Petitioner's Response to Motion to Dismiss, Docket No. 11. Accordingly, I will deny the motion to dismiss Ortiz's "burning" claim.

## V.    Inadequate Medical Care Claim

A claim for inadequate medical care of a pre-trial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment. *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987). In the Third Circuit, pre-trial detainees alleging inadequate medical care are entitled to at least as much protection as is provided under the Eighth Amendment "cruel and unusual punishment" standard articulated in *Estelle v. Gamble*, 429 U.S. 97 (1976). "In order to establish a violation of [a plaintiff's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.2d 192, 197 (3d Cir. 1999)).

The *Natale* two-pronged test does not attempt to second-guess the adequacy of a particular course of treatment, and deference is given to prison medical professionals in the diagnosis and treatment of patients. *See Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). However, if an inmate is prevented from receiving recommended treatment, or is denied access to a physician capable of evaluating the need for treatment, the constitutional standard of *Estelle* has been violated. *Id.* (citing *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)); *see also Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (plaintiff's disagreement with the course and method of treatment is not

sufficient to establish a constitutional claim); *Estelle*, 429 U.S. at 105-106 (negligent treatment or medical malpractice claims do not trigger constitutional protections).

The City's motion to dismiss does not address the seriousness of Ortiz's medical needs and whether any defendant was deliberately indifferent to those needs. A serious medical need includes one that has been "diagnosed by a physician as requiring treatment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003). "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law'" *Natale*, 318 F.3d at 582 (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). Deliberate indifference has been found where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Reading the complaint in the light most favorable to the *pro se* plaintiff, the facts are sufficient to argue that a constitutional violation has occurred. Ortiz describes medical needs, such as an injured hand that he was receiving physical therapy treatment for prior to incarceration, the redness and bleeding caused by the burning incident, and the alleged missed doctor's and surgery appointments. Complaint, Docket No. 3, at page 3. There is also evidence that prison officials were deliberately indifferent to these needs - denying access to physical therapy equipment, refusing to send Ortiz to medical after the burn, and causing him to miss appointments. *Id.*

However, for a supervisor to be liable for a constitutional violation, he must have been "personally involved, meaning through personal direction or actual knowledge and acquiescence" *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009). Therefore, Ortiz must allege specific facts that indicate the defendants knew of and disregarded the risk that his constitutional right to adequate medical treatment could be violated. *See Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("allegations of participation or actual

knowledge and acquiescence, however, must be made with appropriate particularity").

Ortiz describes that he "wrote grievence [sic], sick calls, spoke to doctor and nothing happened." Complaint, Docket No. 3, at page 3. This alone is not sufficient to show liability on the part of a prison supervisor. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under care of medical experts, a non-medical prison official will generally be justified in believing the prisoner is in capable hands. . . absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official. . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference"). The facts in the complaint are insufficient to show that any of the supervisor defendants had reason to believe the doctor Ortiz saw upon processing mistreated or refused to treat his existing hand injury. It is conceivable the doctor assessed Ortiz's treatment need, and determined that continued, immediate physical therapy was not necessary.

Facts in the complaint may indicate that defendant C/O Herrera had actual knowledge of the medical need for burn treatment, but the complaint does not explicitly indicate that Herrera acquiesced to the refusal of treatment. The complaint alleges Sergant Ryan was the one who did not send Ortiz to medical, so it is unclear if Herrera or any other defendant was deliberately indifferent to this medical need. Ortiz also alleges "the jail knew" about his appointments and surgery, but he must specifically describe which defendants knew, how they were aware, and actions that they took (or didn't take) that would indicate deliberate indifference to Ortiz's medical need. *See Rode*, 845 F.2d at 1207-08 (citing *Boykins v. Ambridge Area School Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) ("civil rights complaint adequate where it states time, place, persons responsible")).

Even giving the *pro se* plaintiff the benefit of the doubt, and viewing the complaint in the light most favorable to the nonmoving party, the facts in Ortiz's complaint are not sufficient to support a claim of inadequate medical care. Although Ortiz alleges he made numerous attempts to seek treatment, including

having the warden approve his family bringing him splints and physical therapy equipment from home during a visit, and that treatment was denied or delayed, it is unclear if the named defendants were deliberately indifferent to his medical needs.

It is possible that Ortiz could allege facts showing that one or more of the named defendants were deliberately indifferent to a serious medical need because they knew of his need for treatment and intentionally refused it; delayed treatment based on a non-medical reason; or prevented Ortiz from seeking evaluation by a medical professional. As a result, Ortiz will be granted leave to amend his complaint with respect to his "inadequate medical care" claim.

## VI. Conclusion

For the reasons discussed above, the Court will grant the City's motion to dismiss the "triple celling" and "inadequate medical care" claims, and deny the City's motion to dismiss the "burning" claim. Ortiz will be granted leave to amend his complaint only with respect to the triple celling and inadequate medical care claims. An appropriate order follows.